**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**FREDRICK ROGERS, YAMINAH BERRY,
ARIEANNA BERRY, DEMETREOUS BERRY,
FOR AND ON BEHALF OF THEMSELVES
AND ALL OTHERS THAT MIGHT BE
ENTITLED TO RECOVER FOR THE
WRONGFUL DEATH OF JACQUELINE
BERRY**                                                                 **PLAINTIFFS**

**V.**                                        **CIVIL ACTION NO. 2:13cv145-KS-MTP**

**SUNBELT MANAGEMENT CO.,
WOODBRIAR ASSOCIATES, LTD, AND
BRIARWOOD ASSOCIATES, LTD**                                **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on the Defendants' Motion for Summary

Judgment [50] and Motion to Strike Affidavit of Yaminah Berry [57].  Having considered

the submissions of the parties, the record, and the applicable law, the Court finds that

the Motion for Summary Judgment should be denied and that the Motion to Strike

Affidavit of Yaminah Berry should be granted in part and denied in part.

<u>**BACKGROUND**</u>

This is an action for wrongful death brought under a theory of premises liability

arising from the shooting death of Jacqueline Berry at the Briarwood Apartments in

Jefferson Davis County, Mississippi.  The Briarwood Apartments are located in an

unincorporated area just outside the City of Prentiss.  Plaintiffs Fredrick Rogers,

Yaminah Berry, Arieanna Berry, and Demetreous Berry are the biological children of

Jacqueline Berry, deceased.  Defendants Sunbelt Management Co. and Woodbriar

Associates, Ltd. (hereinafter collectively referred to as "Defendants" or "Sunbelt") own,

operate, and/or manage the Briarwood Apartments.[1]  It appears that "Briarwood Associates, Ltd." is not a separate entity, but instead is the former name of Woodbriar Associates, Ltd.  (*See* 1st Am. Certif. & Agreement of Ltd. P'ship [18-1].)

In December of 2012, Jacqueline Berry lived with Mary Hammond, a family member, at the Briarwood Apartments.  (*See* Y. Berry Dep. [50-2] 29:21-25.)  Yaminah Berry, Jacqueline Berry's daughter, also lived at the subject premises in a separate apartment.  (*See* Y. Berry Dep. [50–2] 7:1-6, 30:20-31:2.)  Plaintiffs claim that shortly after midnight on December 15, three individuals attempted to break into Yaminah Berry's apartment in order to commit a robbery.  Yaminah Berry, Jacqueline Berry, Devon Brown, and others were inside the apartment at that time.[2]  Plaintiffs claim that one of the intruders, James "Jamie" McLaurin, began firing shots into the apartment during the attempted break-in, and that one of the shots struck and killed Jacqueline Berry.  For purposes of summary judgment, Defendants have "accept[ed] as true the position that Jamie McLaurin pulled the trigger that caused Jacqueline Berry's death." (Defs.' Brief in Supp. of Mot. for SJ [51] at p. 2.)  Jamie McLaurin, Eddie Harris, and Adrian Demetrius Speights were all arrested for capital murder in connection with the death of Jacqueline Berry.  (*See* Recommendation for Prosecution [50-6]; Aff. in State Cases [56-1 at ECF p. 2]; Justice Court Subpoenas [56-1 at ECF pp. 14-16].)  However, it does not appear that a grand jury indictment has been returned on any of these

---

[1] The parties have not distinguished between these two entities for purposes of the subject motions.

[2] Devon Brown is the father of Yaminah Berry's child, who was approximately one year old at the time of the incident.

individuals as of the date of this opinion.

On June 11, 2013, Plaintiffs, individually and on behalf of all other wrongful death beneficiaries of Jacqueline Berry, filed suit against Sunbelt in the Circuit Court of Jefferson Davis County, Mississippi.  (*See* Compl. [1-1 at ECF p. 2].)  Plaintiffs claim that the Defendants had actual or constructive knowledge of the Briarwood Apartments being dangerous and unsafe due to the existence of prior criminal incidents; that there were no guards or other appropriate security measures in place at the Briarwood Apartments; and, that the shooting death of Jacqueline Berry was a foreseeable event in light of the numerous prior crimes committed at the subject premises.  Count one of the Complaint alleges negligence and asserts that Plaintiffs are entitled to recover damages under Mississippi's wrongful death statute, section 11-7-13 of the Mississippi Code.  In count two, Plaintiffs claim that the conduct of the Defendants was gross, willful, wanton, and reckless, justifying an award of punitive damages.

On July 5, 2013, Sunbelt removed the proceeding to this Court on the basis of diversity of citizenship jurisdiction under Title 28 U.S.C. § 1332.  (*See* Notice of Removal [1].)  The Notice of Removal asserts that the Plaintiffs are citizens of Mississippi, while the Defendants are citizens of Alabama.  Sunbelt contends § 1332(a)'s amount in controversy requirement is met due to the Plaintiffs seeking damages for wrongful death and punitive damages.  The Court is satisfied that federal subject matter jurisdiction exists pursuant to § 1332.

On June 27, 2014, Defendants filed their Motion for Summary Judgment [50].  On July 28, 2014, Defendants filed their Motion to Strike Affidavit of Yaminah Berry ("Motion to Strike") [57].  Yaminah Berry's affidavit is an exhibit to Plaintiffs' Response in

Opposition to Defendants' Motion for Summary Judgment [54].  (*See* Y. Berry Aff. [54-3].)  The subject motions have been fully briefed and the Court is ready to rule.

<u>**DISCUSSION**</u>

**I.      Motion to Strike [57]**

Defendants argue that the Court should strike and not consider Yaminah Berry's affidavit in ruling on summary judgment because the affidavit contradicts her prior deposition testimony.  It is well accepted in the Fifth Circuit that a "nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony."  *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984) (citations omitted); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("[T]his court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.") (citations omitted).  However, the Fifth Circuit has also held that in ruling on summary judgment, a trial "court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition."  *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980) (citations omitted).  A party's conflicting testimony generally gives rise to an issue of credibility and it is the jury's role to weigh testimony and resolve credibility issues.  *See id.* at 893-94; *see also EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 608, 612 n.3 (5th Cir. 2009) (reversing the trial court's grant of summary judgment and noting that the "very fact . . . the magistrate judge questioned Netterville about perceived discrepancies between her deposition and affidavit tends to indicate that the . . . judge was weighing evidence and resolving conflicts in the summary judgment

evidence, and failing to give the plaintiff the benefit of all favorable inferences that could

be drawn").

Defendants specifically challenge the following statements contained in the

affidavit:

> In the five (5) years preceding my mother, Jacqueline Berry's, death on December 16, 2012, I personally observed the following conduct at Briarwood:  drugs sales, people shooting guns and people fighting with guns and without guns.  I also was a witness to Stacy Hall being shot at the apartments across the street from Briarwood.
>
> . . . .
>
> My lawyer has read to me the portion of the Defendants' brief that deals with James McLaurin being an invited guest in my home prior to my mother being shot.  Nothing could be further from the truth.  I was scared to death of James McLaurin as he was loud, usually carried a gun and quite often displayed it while at Briarwood.  James McLaurin had never been in my apartment before the day of my mother's death and on the day of her death he barged into my apartment uninvited.  I did not ask him to come in.  He just walked in and demanded to use a phone charger.
>
> . . . .
>
> On April 21, 2011 I personally observed James McLaurin shot [sic] at three police officers at the complex next door to Briarwood.

(Y. Berry Aff. [54-3] at ¶¶ 2, 5, 7.)

The portion of Yaminah Berry's July 10, 2014 affidavit stating that she personally

observed shootings and fights at the Briarwood Apartments directly conflicts with her

February 18, 2014 deposition testimony.  At deposition, Yaminah Berry testified that she

was aware of shootings, people kicking in doors, and fights occurring at the subject

premises prior to her mother's death.  However, Yaminah Berry also testified that she

"never witnessed" with her "own eyes" any of these violent crimes.  (Y. Berry Dep. [50-2]

14:4-13.)  No explanation has been offered for this variance in Yaminah Berry's sworn

statements.  Therefore, the Court will disregard Yaminah Berry's testimony by affidavit that she personally observed shootings and fights at the Briarwood Apartments in the five years preceding her mother's death.  *See S.W.S. Erectors, Inc.*, 72 F.3d at 496; *Albertson*, 749 F.2d at 233 n.9.

There is some tension between Yaminah Berry's deposition testimony and affidavit regarding her interactions with Jamie McLaurin on the night leading up to the subject incident.  Yet, the Court does not perceive any direct contradictions necessitating the striking of affidavit testimony.  Moreover, segments of Yaminah Berry's deposition support or correspond with the above-quoted section of the affidavit concerning Jamie McLaurin.  For instance, Yaminah Berry testified that she was aware of McLaurin shooting at police officers some years before her mother's death.  (Y. Berry Dep. [50-2] 15:22-17:9.)  It is not beyond the realm of reason to accept Yaminah Berry's statement that she "was scared to death of James McLaurin" in light of her apparent belief that he had previously shot at law enforcement officials.  (Y. Berry Aff. [54-3] at ¶ 5.)  Yaminah Berry also testified by deposition that she was not friends with Jamie McLaurin, and Defendants fail to cite any portion of her deposition providing that she invited Jamie McLaurin into her apartment or that McLaurin had ever been inside the apartment before the day of the subject incident.  As a result, any potential discrepancies between Yaminah Berry's affidavit and deposition testimonies concerning her dealings with Jamie McLaurin go toward her credibility and are better left for the jury to consider and weigh.  *Chevron Phillips Chem. Co.*, 570 F.3d at 612 n.3; *Kennett-Murray Corp.*, 622 F.2d at 895.

In sum, the Court will disregard the portion of Yaminah Berry's affidavit stating

that she personally observed fights and shootings at the Briarwood Apartments prior to her mother's death in ruling on the Defendants' summary judgment motion.  The Defendants' request that Yaminah Berry's affidavit be stricken or disregarded is otherwise denied.

## II.    Motion for Summary Judgment [50]

### A.    Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted).  The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."  *Id.*  "An issue is material if its resolution could affect the outcome of the action."  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to

be drawn therefrom in the light most favorable to the nonmoving party."  *Sierra Club,*

*Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation,

improbable inferences, unsubstantiated assertions, and legalistic argumentation do not

adequately substitute for specific facts showing a genuine issue for trial."  *Oliver v.*

*Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary judgment is

mandatory "against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial."  *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d

759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct.

2548, 91 L. Ed. 2d 265 (1986)).

**B.   Analysis**

A negligence cause of action encompasses four elements:  (1) duty, (2) breach

of duty, (3) causation, and (4) damages or injury.  *See Thomas v. Columbia Group,*

*LLC*, 969 So. 2d 849, 852 (¶ 11) (Miss. 2007) (citing *Lyle v. Mladinich*, 584 So. 2d 397,

398 (Miss. 1991)).[3]  In a premises liability case, the duty owed to the injured party

depends upon his or her status as an invitee, licensee, or trespasser.  *See Minor Child*

*v. Miss. State Fed'n of Colored Women's Club Housing for the Elderly in Clinton, Inc.*,

941 So. 2d 820, 826 (¶ 20) (Miss. Ct. App. 2006).  "[A]n invitee is a person who goes

upon the premises of another in answer to the express or implied invitation of the owner

or occupant for their mutual advantage."  *Id.* at 826 (¶ 21) (emphasis and citation

---

[3] The Court applies the substantive law of Mississippi in this action founded on
diversity jurisdiction.  *See Cox v. Wal-Mart Stores E., L.P.*, 755 F.3d 231, 233 (5th Cir.
2014) (citing *Wood RIH Acquisitions MS II, LLC*, 556 F.3d 274, 275 (5th Cir. 2009)).

omitted).  The Court's review of the parties' summary judgment briefing reveals no dispute over Jacqueline Berry's status as an invitee at the time of the subject incident.[4] Thus, no discussion of the duty owed to a licensee or trespasser is necessary.

A business owner or operator owes an "invitee the duty to maintain the premises in a reasonably secure or safe condition."  *Lyle*, 584 So. 2d at 399 (citing *Goodwin v. Derryberry Co.*, 553 So. 2d 40, 43 (Miss. 1989)).  This duty has been expanded to require protection against criminal attacks under certain circumstances.  *See id.* Although a business proprietor is "not an insurer of the invitee's safety, [it] has a duty to exercise reasonable care to protect the invitee from reasonably foreseeable injury at the hands of other patrons."  *Id.* (citations omitted).  A criminal act may be considered reasonably foreseeable if the proprietor "had cause to anticipate the third party act." *Minor Child*, 941 So. 2d at 827 (¶ 26) (citing *Crain v. Cleveland Lodge 1532, Order of the Moose, Inc.*, 641 So. 2d 1186, 1189 (Miss. 1994)).  "Cause to anticipate" an assault may be established by "(1) actual or constructive knowledge of the third party's violent nature, or (2) actual or constructive knowledge that an atmosphere of violence existed on the premises."  *Id.*  Evidence supporting "the existence of an atmosphere of violence may include 'the overall pattern of criminal activity prior to the event in question that occurred in the general vicinity of the defendant's business premises, as well as the frequency of criminal activity on the premises.'"  *Gatewood v. Sampson*, 812 So. 2d 212, 220 (¶ 14) (Miss. 2002) (quoting *Lyle*, 584 So. 2d at 399).

The Defendants' summary judgment arguments can be separated into two

---

[4] The Plaintiffs' ability to present evidence on the issue of damages also does not appear to be in dispute at this stage of the litigation.

categories.  First, Defendants contend that the Plaintiffs lack sufficient proof to establish that the murder of Jacqueline Berry at the Briarwood Apartments was a foreseeable event.  Second, Defendants argue that the proximate cause of Jacqueline Berry's death was in no way related to any absence of security measures at the subject premises. These contentions will be addressed in turn.

### 1.    Foreseeability

As noted above, the foreseeability of, or cause to anticipate criminal activity may be established by the defendant's knowledge of a third party's violent nature or knowledge of an atmosphere of violence on the subject premises.  The issue of foreseeability bears upon the duty owed, the breach of that duty, and causation.  *See Davis v. Christian Bhd. Homes of Jackson, Miss., Inc.*, 957 So. 2d 390*,* 401 (¶ 24), 404 (¶ 31), 405 (¶ 33) (Miss. Ct. App. 2007) (considering the existence of prior criminal activity on the defendant's premises in determining whether fact issues existed on each of these elements); *cf. Doe v. Wright Sec. Servs., Inc.*, 950 So. 2d 1076, 1085 (¶ 37) (Miss. Ct. App. 2007) ("Causation, like duty, involves questions of foreseeability.") (citation omitted).

### a.    Actual or Constructive Knowledge of the Assailant's Violent Nature

The summary judgment record evidences several violent crimes allegedly committed by Jamie McLaurin.[5]  In November of 2003, McLaurin purportedly shot at two

---

[5] A criminal conviction is not a prerequisite for a particular incident to constitute competent evidence in a foreseeability analysis.  *See Davis*, 957 So. 2d at 402-03 (¶ 26) (rejecting the defendant's argument that crime statistics should not be considered because they failed to indicate whether the crimes reflected were actually committed); *Am. Nat'l Ins. Co. v. Hogue*, 749 So. 2d 1254, 1259 (¶ 14) (Miss. Ct. App. 2000)

individuals, resulting in his arrest for aggravated assault.  (*See* Doc. No. [56-8].)  In October of 2005, a warrant for the arrest of McLaurin was issued for the crime of armed robbery.  (*See* Doc. No. [56-5].)  In July of 2008, McLaurin was charged with simple assault based on the allegation that he slapped and choked LaShonda Smith.  (*See* Doc. No. [56-13].)  On or about April 21, 2011, McLaurin purportedly fired shots at law enforcement officials, resulting in his arrest for aggravated assault on a police officer. (*See* Doc. Nos. [56-2], [56-3].)  In or about October of 2011, McLaurin allegedly shot Eddie Harris at the Briarwood Apartments.  (*See* Brown Dep. [50-3] 42:1-4, 43:9-16, 46:10-47:12; Rogers Aff. [54-8] at ¶ 3; Doc. No. [56 at ECF p. 23].)  It appears that Carlotta Williams, the manager of the Briarwood Apartments, was also a Deputy Clerk for the Justice Court of Jefferson Davis County when some of the above-listed crimes were purportedly committed by McLaurin.  (*See* Doc. Nos. [56-2 at ECF p. 2], [56-5 at ECF p. 15], [56-13 at ECF p. 3].)  Perhaps, that is why Sunbelt concedes that it, "through its Manager, Carlotta Williams, was aware of McLaurin's violent nature." (Defs.' Brief in Supp. of Mot. for SJ [51] at p. 2.)

Notwithstanding the foregoing concession, Sunbelt implies that it did all it could with respect to McLaurin when on August 31, 2012, Ms. Williams went to the Jefferson Davis County Jail and told him to stay away from the Briarwood Apartments.  "Carlotta Williams did what the law allows—ban McLaurin from the property."  (Defs.' Brief in

_____

("Although these compilations were records of calls made and not necessarily crimes committed, this evidence created a jury question of whether American National was on notice that assaults were occurring.").  Further, the Court accepts the parties' stipulation that Jamie McLaurin shot and killed Jacqueline Berry for purposes of summary judgment.

Supp. of Mot. for SJ [51] at p. 14.)  In essence then, Sunbelt is arguing that it breached

no duty, or, stated differently, that it acted as a reasonable and prudent business owner

in giving McLaurin a one time warning to keep off the premises.  *See Glover v. Jackson*

*State Univ.*, 968 So. 2d 1267, 1277 (¶ 29) (Miss. 2007) ("Negligence is doing what a

reasonable, prudent person would not do, or failing to do what a reasonable, prudent

person would do, under substantially similar circumstances.").

The expected testimony of Dale Jones, Plaintiffs' expert witness, weighs against

the conclusion that Sunbelt complied with the applicable standard of care.  Mr. Jones is

of the opinion that the Briarwood Apartments failed to utilize the most basic of security

measures at the time of the subject incident, including, but not limited to, an access

gate, surveillance cameras, uniformed security, and a banned list.  (*See* Jones Report

[50-1] at pp. 4-5.)  Mr. Jones is also expected to testify that "[s]imply telling James

McLaurin to stay off the property without implementing measures to assure the

enforcement of this directive," caused Jacqueline Berry's death.  (Jones Aff. [54-4] at ¶

3.)  The affidavit of Fredrick Rogers also conflicts with a finding that Sunbelt acted as a

reasonable and prudent premises owner.  Mr. Rogers states that he lived at the

Briarwood Apartments in the five (5) years preceding Jacqueline Berry's death and

during this time period, no one "tried to deter drug use, shootings, drinking and fights

that occurred numerous times a week if not . . . daily".  (Rogers Aff. [54-8] at ¶¶ 2, 6.)

Mr. Rogers also states that if Ms. Williams told McLaurin to stay off the premises, it did

no good because "McLaurin continued to visit, wander, trespass, harass and intimidate

residents" between August 31, 2012 and December 16, 2012.  (Rogers Aff. [54-8] at ¶

7.)

The question of whether the defendant breached its duty is usually for the jury to resolve.  *See Lyle*, 584 So. 2d at 400 (citation omitted).  In light of the Defendants' admitted knowledge of Jamie McLaurin's violent nature, the Court determines that reasonable jurors could find that advising McLaurin to keep away from the premises without employing any backup measures, such as private security, in case McLaurin failed to heed the warning was unreasonable under the circumstances.  *Cf. Bennett v. Highland Park Apartments, LLC*, No. 2012-CA-01629-COA, 2014 WL 3408970, at *1 (¶ 3), *4 (¶ 14) (Miss. Ct. App. July 15, 2014) (finding that fact issues existed as to whether there was a breach of duty where the plaintiff alleged that the defendant failed to hire security or maintain surveillance cameras and access gates at an apartment complex).  Therefore, Carlotta Williams' one time warning to Jamie McLaurin does not mandate summary judgment in the Defendants' favor.

### b.   Actual or Constructive Knowledge of an Atmosphere of Violence

The following particulars, *in toto*, create a jury issue as to whether an atmosphere of violence existed at the Briarwood Apartments prior to the shooting of Jacqueline Berry:

(i)     An affidavit executed by Ronald B. Barnes, the manager of the Briarwood Apartments from approximately March/April of 2008 to March/April 2011, provides that he had discussions with his supervisors regarding the level of crime and violence at the subject premises, the need for on-site security and additional security measures to prevent violent crimes, and the inability of local law enforcement to safeguard the premises.  (*See* Barnes Aff. [54-1] at ¶ 2.)  Mr. Barnes further states, "The owners and managers of Briarwood to date have done nothing we discussed to prevent crime at Briarwood . . . ."  (Barnes Aff. [54-1] at ¶ 2.)

(ii)    John Wayne Tolar, an investigator for the Jefferson Davis County Sheriff's Office (hereinafter "Sheriff's Office") since January 1, 2012, testifies by

affidavit that the Sheriff's Office receives weekly requests for assistance regarding shootings, assaults, and break-ins at the Briarwood Apartments and the surrounding area.  (*See* Tolar Aff. [54-2] at ¶¶ 2-3.)  Between January 1, 2012 and the date Jacqueline Berry was killed, Tolar spoke with management for the Briarwood Apartments about the high level of criminal activity occurring at the subject premises, the need for on-site security and additional security measures, and the inability of the Sheriff's Office to provide additional patrol services due to staffing and budgeting issues.  (*See* Tolar Aff. [54-2] at ¶ 5.)  Tolar further states that "none of the suggestions I made to make Briarwood Apartments safer have been accomplished and Briarwood Apartments remains a very unsafe place to live or even visit because of the level of unchecked violence."  (Tolar Aff. [54-2] at ¶ 5.)

(iii)    An affidavit from Rontonagles McNair, who worked as a dispatcher and supervised all the other dispatchers for the Sheriff's Office from January 1, 2000 to December 31, 2011, states that in the last five years of his employment, the Sheriff's Office received ten to twelve calls for assistance per week with respect to the Briarwood Apartments and the surrounding area, and that the calls "routinely involved violent crimes such as shootings, assaults and breaking and entering."  (McNair Aff. [54-5] at ¶¶ 2-3.)

(iv)    Richard Johnson, a captain for the Sheriff's Office between 1996 and December 31, 2011, testifies by affidavit that within the last five years of his employment, he and those working under his supervision responded to several calls for assistance per week regarding criminal activity at the Briarwood Apartments and the surrounding area, and that the calls "routinely involved violent crimes such as shootings, assaults, fights and breaking and entering."  (Johnson Aff. [54-6] at ¶¶ 2, 4.)

(v)    An affidavit executed by Ron Strickland, the Sheriff of Jefferson Davis County, states that since he took office in January of 2012, the Sheriff's Office has received numerous calls per week to respond to criminal activity (including, but not limited to, shootings and fights) at the Briarwood Apartments and the surrounding area.  (*See* Strickland Aff. [54-7] at ¶¶ 2-3.)

(vi)    The affidavit of Fredrick Rogers provides that he personally witnessed fights and shootings at the Briarwood Apartments prior to the death of his mother, Jacqueline Berry.  (*See* Rogers Aff. [54-8] at ¶ 2.)  Rogers also states that Jamie McLaurin shot Eddie Harris at the Briarwood Apartments prior to his mother's death.  (*See* Rogers Aff. [54-8] at ¶ 3.)

(vii)    Devon Brown testified at deposition that he witnessed Jamie McLaurin

-14-

shoot at police officers at the apartment complex across the street from the Briarwood Apartments, which Sunbelt also manages.[6]  (*See* Brown Dep. [50-3] 43:17-21, 47:13-19.)

In their Rebuttal Brief [59], the Defendants seem to argue that crime data or statistics are required to establish the existence of an atmosphere of violence and that affidavits from law enforcement officials regarding their recollection of crime data are insufficient as a matter of law.  This argument fails to negate the existence of a genuine issue of material fact for several reasons.  First, the Mississippi Supreme Court and Mississippi Court of Appeals have affirmed jury verdicts in premises liability cases where the evidence at trial included testimony from police officers regarding the frequency of criminal activity on the subject premises.[7]  Second, the Defendants do not cite, and this Court is unaware of any legal authority holding that the sworn statement of a law enforcement official regarding criminal activity must be disregarded in the absence of corroborating police records or reports.[8]  Third, the above-cited affidavits

---

[6] Prior instances of violent crime need not specifically occur on the defendant's premises in order to be counted under an atmosphere of violence analysis.  *See Gatewood*, 812 So. 2d at 220-21 (¶¶ 15-17) (holding that reports of violent crimes in the neighborhood surrounding the defendant's premises created a fact issue).

[7] *See InTown Lessee Assocs., LLC v. Howard*, 67 So. 3d 711, 714-15 (¶¶ 5-7), 718 (¶ 23) (Miss. 2011) ("Numerous Jackson police officers testified at trial regarding calls for service at InTown."); *Gibson v. Wright*, 870 So. 2d 1250, 1257-58 (¶¶ 23-27) (Miss. Ct. App. 2004) (referencing testimony from two police officers regarding crime at the defendants' business and the surrounding area in its holding that substantial evidence supported the jury's finding that the murder of the plaintiff's decedent was reasonably foreseeable).

[8] Neither of the two authorities cited by the Defendants in the "atmosphere of violence" section of their Rebuttal Brief [59] is instructive on this point.  *See Tillman v. Wendy's Int'l, Inc.*, 252 F.3d 434, 2001 WL 360691 (5th Cir. Mar. 13, 2001); *Kroger Co. v. Knox*, 98 So. 3d 441 (Miss. 2012).  There was no discussion of any police officer's testimony in *Tillman*.  In *Kroger Co.*, the Mississippi Supreme Court appeared to give no

executed by current or former law enforcement officials reference weekly reports of criminal activity at the Briarwood Apartments, which can be construed as reflecting "the overall pattern of criminal activity" or "frequency of criminal activity on the premises." *Thomas*, 969 So. 2d at 854 (¶ 20) (quoting *Lyle*, 584 So. 2d at 399).  The Court must construe the evidence in the nonmovants' favor at this stage of the case.  *See Sierra Club, Inc.*, 627 F.3d at 138.  Fourth, Defendants ignore the sworn statements of private citizens regarding violent crimes occurring at the Briarwood Apartments and the surrounding area,[9] as well as the affidavits of Ronald B. Barnes (a private citizen) and John Wayne Tolar (a law enforcement official) indicating that Sunbelt was advised of the need for additional security measures prior to the death of Jacqueline Berry.  (*See* Barnes Aff. [54-1] at ¶ 2; Tolar Aff. [54-2] at ¶ 5.)  The Court cannot overlook these averments in ruling on summary judgment.[10]

---

weight to expert testimony regarding "calls for service" because the plaintiff "presented no police reports *or other evidence* verifying the accuracy of the calls."  98 So. 3d at 444 (¶ 18) (emphasis added).  Here, viewing the summary judgment record in the Plaintiffs' favor, the Court finds evidence confirming the veracity of calls for service in the form of the affidavits executed by current or former law enforcement officers attesting to their personal knowledge of criminal activity, including shootings and fights, at the Briarwood Apartments.  (*See* Tolar Aff. [54-2] at ¶¶ 6-7; Johnson Aff. [54-6] at ¶¶ 5-6; Strickland Aff. [54-7] at ¶¶ 4-5.)

[9] (*See* Rogers Aff. [54-8] at ¶¶ 2-3; Brown Dep. [50-3] 43:9-21, 47:4-19.)

[10] *See Thomas*, 969 So. 2d at 854-55 (¶¶ 21-23) (reversing the trial court's grant of summary judgment where there was testimony that the apartment manager planned, but ultimately failed, to improve security in light of a prior shooting); *Bennett*, 2014 WL 3408970, at *5 (¶ 19) (considering, *inter alia*, witness accounts that demonstrated the defendant was aware of an atmosphere of violence); *cf. Howard*, 67 So. 3d at 714 (¶ 5) (taking note of law enforcement advising the defendant to undertake additional security measures in affirming the trial judge's denial of a motion for directed verdict); *Gibson*, 870 So. 2d at 1257-58 (¶¶ 26-27) (same).

The Defendants admit having knowledge of Jamie McLaurin's violent nature. Further, genuine issues of material fact exist as to whether an atmosphere of violence existed at the Briarwood Apartments. As a result, Defendants are not entitled to summary judgment as a matter of law based on the contention that McLaurin's shooting of Jacqueline Berry was unforeseeable under the circumstances. Mississippi "law requires only that the defendant foresee that some violent act . . . might occur, not the particular violent . . . act" at issue in the litigation. *Glover*, 968 So. 2d at 1279 (¶ 41).

### 2. Proximate Cause

"Proximate cause has two separate and distinct concepts: 1) cause in fact; and 2) foreseeability." *Hunt v. Mid S. Waffles, Inc.*, No. 2:11cv45, 2012 WL 681443, at *7 (S.D. Miss. Feb. 29, 2012) (citing *Davis*, 957 So. 2d at 404). "'Cause in fact' means 'that the act or omission was a substantial factor in bringing about the injury, and without it the harm would not have occurred.'" *Id.* The matter of foreseeability has been addressed in the preceding section of this opinion.

Defendants argue the evidence shows that the three suspects (Jamie McLaurin, Eddie Harris, and Adrian Speights) were all in Yaminah Berry's apartment as social guests a few minutes prior to the shooting incident "and therefore the cause in fact of this shooting in no way can be attributed to any lack of a private security guard or other security measure . . . ." (Defs.' Brief in Supp. of Mot. for SJ [51] at p. 2.) Portions of the depositions of Yaminah Berry and Devon Brown favor this argument. Devon Brown testified that shortly before the subject incident, he shared a drink with Adrian Speights. (*See* Brown Dep. [50-3] 18:10-16, 26:1-25, 29:4-21.) Yaminah Berry testified that Jamie McLaurin entered her apartment two times on the night leading up to the subject

incident.  The first time, McLaurin walked in and asked if he could borrow a phone

charger.  (*See* Y. Berry Dep. [50-2] 41:1-42:2.)  Yaminah Berry agreed, and McLaurin

stayed in the apartment approximately three or four minutes until his phone rang.  (*See*

Y. Berry Dep. [50-2] 52:10-53:3.)  As to the second instance, McLaurin stepped in the

doorway and told Jacqueline Berry that he had gotten one of her beers from the

apartment upstairs.  (*See* Y. Berry Dep. [50-2] 53:16-55:13.)  McLaurin did not knock

before entering Yaminah Berry's apartment either time.  (*See* Y. Berry Dep. [50-2]

41:11-19, 55:5-13.)  Yaminah Berry further provided that Eddie Harris was in the

apartment at some point because her friend, Chaka Easterling, was visiting and Chaka

was Eddie's girlfriend.  (*See* Y. Berry Dep. [50-2] 36:10-37:1, 40:7-25.)  These

circumstances support the Defendants' contention that a security guard could not have

prevented McLaurin from suddenly changing his identity from a guest or visitor to a

robber/assailant.

On the other hand, the summary judgment record also evidences circumstances

militating against the conclusion that no security measures could have prevented the

criminal act at issue in this lawsuit.  There was a passage of time, although brief in

nature (approximately five minutes), between the suspects leaving the area of Yaminah

Berry's apartment and then returning and attempting to kick in the door.  (*See* Y. Berry

Dep. [50-2] 68:9-13; Brown Dep. [50-3] 29:17-21.)  One of the suspects, Jamie

McLaurin, was purportedly armed with "a big, assault type of rifle" during the attempted

break-in.  (Brown Dep. [50-3] 20:18-25, 24:6-16.)  Another one of the individuals had a

pistol.  (*See* Brown Dep. [50-3] 20:18-25.)  Shortly before the shooting of Jacqueline

Berry, the suspects allegedly knocked out an individual named Pete Lampton and

disabled the lighting outside Yaminah Berry's apartment.  (*See* Brown Dep. [50-3] 36:16-39:25.)  Giving Plaintiffs the benefit of these facts and the resulting inferences, the Court is unable to hold as a matter of law that a security presence at the subject premises would have had no deterrent effect on this brazen, criminal behavior.  *Cf. Lyle*, 584 So. 2d at 400 (reversing the trial court's grant of summary judgment and rejecting the "reasoning that the presence of a security person would have made no difference" as to the plaintiff's assault).  Also relevant here are Yaminah Berry's statements that Jamie McLaurin was not an invited guest and that he just barged into her apartment prior to the subject incident,[11] as well as Carlotta Williams' August of 2012 warning to McLaurin for him to stay away from the apartments due to her knowledge of his violent nature.  These facts lend credence to the Plaintiffs' argument that if the Defendants had taken appropriate measures to ensure the alleged banned list was enforced, McLaurin would not have been present on the premises and Jacqueline Berry would still be alive. *Cf. Thomas*, 969 So. 2d at 855 (¶ 22) (finding that a material fact issue existed as to proximate cause in part because the apartment manager failed to carry out her plan to ban the assailant from the premises).

"Where reasonable minds might differ on the matter, questions of proximate cause and of negligence . . . are generally for determination . . . [by the] jury."  *Hankins Lumber Co. v. Moore*, 774 So. 2d 459, 464 (¶ 11) (Miss. Ct. App. 2000) (citing *Am. Creosote Works of La. v. Harp*, 215 Miss. 5, 60 So. 2d 514, 517 (Miss. 1952)). Moreover, the issue of a criminal act constituting a "superseding intervening cause is so

---

[11] (*See* Y. Berry Aff. [54-3] at ¶ 5.)

inextricably tied to causation, it is difficult to imagine a circumstance where such issue would not be one for the trier of fact." *O'Cain v. Harvey Freeman & Sons, Inc.*, 603 So. 2d 824, 830 (Miss. 1991) (citation omitted).  Based on the above-discussed evidence, the Court finds that reasonable minds could differ on the question of whether a lack of security measures at the Briarwood Apartments was the cause in fact of Jacqueline Berry's murder.  Thus, jury issues also exist on the matter of causation.

The principal authorities cited by the Defendants in support of their proximate cause arguments do not alter this conclusion.  *See Kroger Co.*, 98 So. 3d 441; *Double Quick, Inc. v. Lymas*, 50 So. 3d 292 (Miss. 2010); *Davis*, 957 So. 2d 390.  In *Kroger Co.*, the Mississippi Supreme Court considered whether the defendant had a duty to place an *armed* guard in its parking lot.  *See* 98 So. 3d at 442 (¶ 1).  The claim in this action is that Sunbelt failed to utilize basic security measures, such as surveillance cameras and on-site security.  Furthermore, the Mississippi Supreme Court never proceeded past the issue of the defendant's duty to address whether the absence of an armed security guard was the cause in fact of the subject assault.  *See* 98 So. 3d at 445 (¶¶ 23-24).

In *Davis*, the fact that on-duty City of Jackson Police Department officers were at the subject premises when the plaintiff's decedent was shot and killed negated the contention that security guards would have deterred the shooting.  *See* 957 So. 2d at 407-08 (¶ 42).  "If the presence of JPD on the premises . . . did not deter Younger from shooting Lucius, we fail to see how a jury could conclude that security guards would have provided any deterrence."  *Id.* at 408 (¶ 42).  Here, no evidence has been presented showing that any law enforcement official was present at the Briarwood

Apartments at the time of Jacqueline Berry's murder.  The appellate court also found no facts establishing that Younger would have been denied access to the property by security guards or a keypad entrance.  *See id.* at 407 (¶ 41).  In this case, Jamie McLaurin was purportedly banned from the Briarwood Apartments by Carlotta Williams on August 31, 2012.  However, the Plaintiffs have submitted proof supporting the reasonable inference that the Defendants failed to take any steps to enforce the ban. "After August 31, 2012 and up until December 16, 2012, James McLaurin and numerous other individuals who did not live at Briarwood and who appeared to have no legitimate reason to be there, continued to visit, wander, trespass, harass and intimidate residents and invited visitors of Briarwood."  (Y. Berry Aff. [54-3] at ¶ 3; *see also* Rogers Aff. [54-8] at ¶ 7.)

The Mississippi Supreme Court reversed the trial court's refusal to grant a motion for judgment notwithstanding the verdict ("JNOV") in *Lymas*, holding that the only evidence presented on the issue of proximate cause was the conclusory and speculative testimony of the plaintiffs' expert witnesses.  *See* 50 So. 3d at 299 (¶¶ 32-35).  The Court is not yet in a position to determine whether all of the evidence presented at trial, including the testimony of expert and fact witnesses,[12] is sufficient to support a jury verdict in the Plaintiffs' favor.  Moreover, the Court discerns no appreciable difference between the degree of specificity in the affidavit of the Plaintiffs'

---

[12] An expert opinion regarding causation is not a prerequisite to the maintenance of a premises liability action for the failure to provide adequate security.  *See Hunt*, 2012 WL 681443, at *7.

expert witness, Dale Jones,[13] and the expert testimony submitted by the plaintiffs in the more recent Mississippi Supreme Court case of *InTown Lessee Associates, LLC v. Howard*, 67 So. 3d at 715 (¶ 9), on the issue of proximate cause.  In *Howard*, the trial court's denial of a motion for JNOV was affirmed.  *See id.* at 717-18 (¶¶ 21-23).

Finally, the Defendants' repeated contention that only under a strict liability standard could they be held liable is unconvincing.  Notwithstanding the Court's ruling on summary judgment, the Plaintiffs will be required to prove each and every element of their negligence claim in order to obtain a damage award from the jury.  Therefore, the central question of whether the Defendants breached "a duty to exercise reasonable care to protect . . . [Jacqueline Berry] from reasonably foreseeable injury at the hands of" Jamie McLaurin will proceed to trial.  *Thomas*, 969 So. 2d at 853 (¶ 15) (quoting *Gatewood*, 812 So. 2d at 219-20).

## CONCLUSION

For the foregoing reasons:

IT IS ORDERED AND ADJUDGED that the Motion to Strike [57] is granted in part and denied in part, as outlined above.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion for Summary Judgment [50] is denied.

SO ORDERED AND ADJUDGED this the 15th day of September, 2014.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE

---

[13] (*See* Jones Aff. [54-4] at ¶ 3.)